Najera-Rodriguez against Barr, and we'll hear first from Ms. Campbell. May it please the court, my name is Colleen Campbell and I represent the Supreme Court's framework in MAPIS. First, the structural separation of the term controlled substance from its definition. Second, the marked textual differences   and the other subsections underneath section 402C. And third, the decision of the Illinois Supreme Court in Hegberg, which we consider instructive. The reason we find the structural separation of the term significant is under this court's precedent and elder, where the term dangerous drug was separated from its definition and listed the controlled substances that could qualify as not a controlling state Supreme Court precedent on point, that that made the indivisibility clear. The reason we find the textual differences to be of note in this court's analysis is looking at the text you can see how C uses an umbrella term, a controlled substance, and it does not distinguish between the identities of the different controlled substances in terms of setting penalty ranges. If you compare that to A and B, which subsection B cross-references section A with particular subdivisions, you can see that A is listing the identity in a way that makes it an element of the crime under A, and it's tying those separate identities to distinct penalties, which creates C in a way that it's a tool for the prosecutor essentially, and how we believe it's functioning under the act is playing cleanup. If you cannot make your case under A or B, then it's available to the prosecutor to charge under C, where the prosecutor could prove that the defendant possessed a controlled substance, perhaps some kind of an opioid, but you could not prove the exact derivative. And third, we find the Illinois Supreme Court's decision in Hagberg instructive in this case. It is true that we do not believe that Hagberg definitively answers the question, and Mathis, and as applied in this court in Edwards, Mathis is instructing courts in these analyses to look for state Supreme Court decisions that are authoritatively deciding the issue, and Hagberg is a sufficiency of the evidence case. We think Hagberg does provide a strong indication that as to C, the identity is not an element, it's a separate means. Now Hagberg was a sufficiency of the evidence case, and in Hagberg, there had been a field test performed and no other evidence of the identity of the controlled substance, and the court had to discuss the elements that the government had to prove to convict under section 402C. And the reason we think that discussion is significant is because the opinion discusses that the government needed to prove that the defendant possessed a controlled substance, not the identity of a controlled substance, and it seems more likely that if it had to prove the exact identity rather than a controlled substance, it simply would have written that. Another part of Hagberg that is also indicating this way is that if you look at page 33, its second holding is talking about whether a field test can ever be sufficient to convict, and it discusses favorably a case where the only evidence that was proven, the other evidence in that case had a chain of custody issue, the only evidence that was proven in this case that Hagberg is discussing is that there was a field test that showed the individual possessed a derivative of opium. Later evidence that was thrown out for chain of custody issues showed heroin. That was thrown out, but that was enough to help hold a conviction anyways, and since Hagberg discusses that favorably, that's another indication that here our theory is working. The other case that we think is most significant to this court's analysis would be Elder itself. We consider this a case of an absence of a Illinois state Supreme Court decision authoritatively determining the issue, and Elder, when it faced that lack of an Supreme Court decision, went to the text, it looked at how the term dangerous drug was separated from its definition, and it determined that the identity was not divisible. Now given that the BIA's decision, which is the appropriate decision for this court's review, did not go further than this divisibility analysis, its decision turned solely on the question of whether the term controlled substance was divisible, and it did not reach the peak, which Mathis instructs if there's any lingering uncertainties, you can take a peek at the record. We think there is a Chenery issue to proceed to the peak, given that the BIA's order should stand or fall on the BIA's grounds. However, were this court inclined to go ahead and take a peek, we do not think that these conviction records plainly establish that the identity is an element. There would be two documents to look at on this record. The first is at AR 318, the second is at AR 319, and that is the sentencing document, which uses the Let me ask you a quick question, counsel. Let's suppose a suspect has one ecstasy pill in a left pocket, another controlled substance pill in a right pocket, let's say an opiate painkiller without a prescription. Can he be charged with two separate 402c offenses for that, given the language about in the We do not believe that is the case, Your Honor, and the reason that we don't is because we think that that legislative amendment in the preamble is targeting subsections A and B, in the sense that it discusses the substances listed therein. A is actually listing them therein and incorporating them as elements of the offense and tying them to separate penalty ranges. C is not listing therein. And then second, the other thing that would instruct there is that that amendment was added to address the Illinois Supreme Court's result in Manning. Manning was decided under a precursor to Section 402a. We provided that statute at Addendum 6 to the Blue Brief, and that precursor statute was essentially blocking multiple convictions under that precursor to 402a, and those are the substances that the legislature targeted as more problematic, serious drugs for which the legislature did not want to have to proceed one by one. It wanted for those high amounts and those trouble drugs to be able to prosecute more harshly, whereas C, we believe, is written as a fallback. I see I'm going into my rebuttal time, and I'd like to reserve the rest. Thank you, Your Honor. Thank you, Ms. Campbell. For the record, may it please the Court, I'm Erica Miles for the Attorney General. Section 402c is divisible. We have the preamble that Judge Hamilton just explicitly saying that each and every drug listed herein, and listed herein is referencing the entire Controlled Substances Act, not Section 402. I know because that same language is listed in Section 100, which is the legislative intent codified for the Controlled Substances Act, and it says listed herein in Section 100, there are no drugs then later listed in 100, there are no subsections later listed in 100. And yet in 402 there are, right? There are, I agree, but and then I also know because we have Supreme Court and Appellate Court precedent interpreting this preamble language. This, they refer to this as as long as there are multiple types of drugs, then simultaneous possession can still result in multiple convictions. Do any of those cases address 402c? They address 402 directly, and the Carter case is just talking about the preamble, so and but the absence of addressing 402c is where I'm going with this. As Carter points out, the legislature knew how to override Manning. It knew how to authorize multiple convictions for having different types of drugs at the same time. It presumably also then knew how to limit that authorization, to say only with respect to certain substances, or to say only with respect to subsections A and B, but the legislature did not do that. The legislature in the preamble and and the courts in interpreting the preamble provide no limitation whatsoever about specific substances or about specific subsections, and in that absence it is completely reasonable to infer that they read 402 to be referring, the 402 preamble, to be referring to each and every substance listed in the Controlled Substances Act as under the schedules and a few of the other statutes that specify or carve out specific substances. How does this case differ from the court's opinion in Elder, where we found a similarly structured Arizona case statute to be indivisible? This case is different in every way except for the fact that the umbrella term controlled substance there, dangerous substance, is used requiring cross-reference to the drug schedules. Otherwise, Elder is entirely distinguishable. The similarities end there. The Arizona statute doesn't have this kind of preamble language which unambiguously says multiple convictions are permissible for having different types of drugs. Arizona statute does not have that. In Elder, the parties didn't even brief divisibility. It wasn't presented to the court. There is Arizona law, and we've been litigating this with different outcomes in the Ninth Amendment, Arizona law, and the court wasn't presented with the issue. It was only looking at categorical match and the sufficiency of documents in that case. So in Elder, the court didn't find a divinitive case doing its own review, not from the arguments by the parties, and it just moved on to looking at the structure of the statute with the umbrella term and having to look at state law interpreting the drug statute at issue. That didn't happen here. We don't even have a peak in Elder because the documents there, as I mentioned, were challenged as even being sufficient to establish the fact of conviction and a fact that it's not conclusive, and they proceed to looking at state law interpreting the drug statute at issue. So the peak didn't even happen in that case. It doesn't need to happen here because we have preamble language that was absent in Elder. That preamble definitively meets the math as standard for showing that each and every controlled substance is an element and not a means. I admire your confidence, but listed herein? Yes. Why isn't that just referring to those listed in Section 402? Well, because if you look at Section 100, where it says listed herein, there are no drugs listed therein. There are no subparts listed therein. We're repeating ourselves. Yes, but also the buttressing terms in that sentence, it begins with the act, it ends with the act. The term this section doesn't happen until the following sentence. So the very first two sentences are referencing the act, the Controlled Substances Act, and then the next sentence says for purposes of this section, and then it talks about this Section 402. So I think you have very strong indicators within 402's language. When you look at the companion language in Section 100, which is talking about the legislative intent, you have the Carter case not carving out specific substances or subsections, and then you have all the courts of appeals cases that repeat the same thing that Carter said, reinforcing that a person can be convicted as long as there are two types, not some types, not certain types, as long as they have more than one type of drug. Do we have cases from the Illinois courts under 402C? Yes. With multiple convictions of possessing different drugs at the same time? Yes. Which are those? We have precedential courts of appeals cases. They don't address the issue head on, but what they do show is that it's permissible to have two... Which ones do you rely on? Ortiz, white, and black. In Ortiz, the court vacated one of the convictions, finding that the amending language that was added had been repealed. So this happened twice. This amendment, this preamble was added in, but it was invalidated because it was procedurally defect how it was enacted in the first place. So it first was introduced in 1995. Ortiz's two simultaneous convictions under 402C happened in 1996, but then the amendment was repealed. So the amendment then was reenacted in 1998. So because he was between the enactment and reenactment period, they found that he was wrongfully convicted because he was back in the world of the Manning case where you could only permit one conviction. Otherwise, it was entirely permissible, and the fact that he had been convicted in 1996 for the two convictions shows that it was permissible. The white case involved charges for armed violence, but the two 402C drug convictions had to serve as the predicate offenses to then examine whether or not the armed violence convictions were permissible. The court there explicitly found that the two 402C convictions were proper, and those... Wasn't one of the convictions vacated? Excuse me? Wasn't one of the convictions vacated? The armed violence conviction. So it reverted back to an armed violence conviction plus the second 402C just drug conviction. So what happens is when you're looking to get an armed violence conviction, you have to have the predicate felonies, which are the drug offenses, and then you have to prove the gun possession offense. So the two drug offenses are subsumed into the gun armed violence. So what happened at the end of white was that they kept the one armed violence, which had the predicate 402C conviction one. They vacated the second armed violence, but then kept a conviction for just the second possession 402C. And that's the white case. And the white case notably involves different substances than those in subparts A and B. It's like 5-methoxy-N and N-dios. I can't even pronounce these, but I assure you these are substances that aren't even in subparts A or B, that they are exclusively under the C case, and you have two convictions for 402C. The third case was black, where we had two 402C convictions. That case was sent back for retrial because there's a waiver of counsel issue. So that's the context that this came up. Can the court address this issue? I'm sorry? Can the court address this issue in black? What it did say, it had to address whether or not it would be a violation of double jeopardy to send the case back for retrial. And they established that the evidence, the two 402C convictions were permitted by the evidence. So a retrial would be appropriate because it does not violate principles of double jeopardy. Okay. So all those cases made clear. Thank you. I see that I'm past my time. Okay. Thank you, counsel. Rebuttal, Ms. Campbell. I just wanted to speak to those three cases in case that's helpful. We do in our reply brief, starting at page seven, distinguish them and explain why we don't think they speak authoritatively. I don't think that any of these are directly on point, directly holding that two possessory convictions were appropriate. And kind of this hunt through the dicta is not the efficient analysis that Mathis had in mind when it made this framework. Just reaching Ortiz first, that was, it did turn on the fact that it was the pre-amendment language. But the court did not need to and did not directly address whether it was appropriate under the amended language. And it did not say this was entirely permissible. Otherwise, the result was directed by the pre-amendment language. White, it stated in dicta that the record would have supported two convictions here. But, again, it was not directly addressing that issue. And, again, it also shed doubt. It did not reach whether the one act, one crime doctrine would have been violated, which also would bear on whether two convictions are permissible and sheds doubt whether that would have been okay under 402C. And, again, black was a waiver of counsel issue. It did not, again, directly address and it was not directly raised whether the two convictions were appropriate. It simply held, you know, waiver of counsel issues were violated, but it can permit retrial. Double jeopardy was not violated by permitting retrial on the counts, not whether two counts alone were separate. Thank you for your time. Thank you very much. And our thanks to both counsel. The case is taken under advisement. We'll be in recess until tomorrow morning.